THE BOARD OF DRAINAGE COMMISSIONERS OF PARKVILLE DRAINAGE DISTRICT, No. 1, v. BRETT ENGINEERING COM-PANY.

(Filed 18 February, 1914.)

1. Drainage District—Bond Issues—Time of Objections—Actual No-tice—Publication in Newspaper—Interpretation of Statutes.

It is not necessary to the validity of bonds issued by a drain-age district under the provisions of chapter 442, Public Laws 1909, amended by chapter 67, Public Laws 1911, that the notice of the time of hearing objections to the final report of the en-gineer and viewers was not published in some newspaper of gen-eral circulation in the county, when it appears that no news-paper was published therein, or elsewhere, which has a general circulation in the county, and that the landowners affected had actual and ample notice of such time and raised no objection.

2. Drainage District—Liberal Construction—Interpretation of Stat-utes.

The drainage laws apply to the whole State, and by the ex-press provision of section 37, chapter 442, Public Laws 1909, they should be liberally construed to promote the leveeing, ditching, draining, and reclamation of wet and overflowed lands.

3. Drainage Districts — Objection — Publication in Newspaper —
Waiver—Consent—Interpretation of Statutes.

Where the purchaser of bonds issued under Public Laws 1909,
ch. 442, amended by the Public Laws 1911, ch. 67, protest their
validity on the ground that no notice of the time of hearing of
objections had been published in a newspaper, and it appearing
that the landowners affected . had full and ample actual no-
tice thereof, and publication could not be made because no news-
paper was published in the county or had a general circulation
therein, the failure of such owners to pay to the county treasurer
the full amount for which their lands are liable, publication
being made in accordance with the amendatory act, sections 9
and 10, will operate as a waiver of their rights to contest the
validity of the bonds, and the purchaser of the bonds is in no
better condition to resist their validity, and all parties to the
proceedings are held to have consented to the issuance.

APPEAL by defendant from *Ferguson, J.,* at Spring Term,
1914, of PERQUIMANS.

This is a controversy submitted without action to test the .
validity of certain drainage bonds, issued under the provisions
of chapter 442, Public Laws 1909, as amended by chapter 67,
Public Laws 1911, which the Engineering Company agreed to
accept in payment for construction.

It is admitted by the parties: "That all of the provisions of
the said chapter 442, Public Laws 1909, and of chapter 67, Pub-
lic Laws 1911, pertaining to the creation and establishment of
drainage districts and the issuance of bonds, have been com-
plied with, saving only in this single respect, to wit: That
after the completion of the final report, and after the same had
been filed and examined by the court, found in due form and in
accordance with the law and accepted, and the date fixed by the
court for the final hearing upon the report in accordance with
the provisions in section 15 of chapter 442, Public Laws 1909,
the notice by publication in a newspaper as required by section
15 was not given, there being no newspaper published in the
said county of Perquimans. Notice of the said final hearing
was given by posting a written or printed notice at the door of
the courthouse and at five conspicuous places throughout the

district for more than two weeks before the said final hearing, and during this time a copy of the said final report was constantly on file in the office of the clerk of the Superior Court of Perquimans County and open to the inspection of any landowner or other person interested within the district; that notwithstanding the failure to publish the said notice in a newspaper as required by said section 15 of chapter 442, Laws 1909, each and every of the landowners and persons interested within the said drainage district had actual notice of the date set by the court for the final hearing of the said report, as attested by the admissions of such landowners in writing hereto attached."

All the landowners and other persons interested file a paper in this proceeding, stating:

"That we and each of us had actual notice of the hearing of the final report of the viewers and engineer appointed in the above entitled matter, on 17 March, 1913, and had actual notice of the time and place that said hearing was to take place, and that our lands were assessed in said final report. This 15 December, 1913."

His Honor held that the bonds were valid, and the Engineering and Construction Company excepted and appealed.

*J. S. McNider and Charles Whedbee for Drainage Commissioners.*

*Small, McLean, Bragaw and Rodman for Construction and Engineering Company.*

ALLEN, J. The proceedings leading up to the issuing of the bonds conform to all the requirements of chapter 442 of the Public Laws 1909 as amended by chapter 67 of the Public Laws 1911, except in the one particular, that after the final report of the engineer and viewers was filed and accepted by the court, notice of the time of hearing objections to the report was not published in some newspaper of general circulation in the county, in addition to posting a notice at the courthouse door and at five conspicuous places in the drainage district, both publications being required by section 15 of the first act.

Is this fatal to the validity of the bonds? We think not, as it appears that no newspaper is published in the county, and there is no evidence or finding that one published elsewhere has a general circulation there.

The act applies to the whole State, and it provides (sec. 37, ch. 442, Laws 1909) that it "shall be liberally construed to promote the leveeing, ditching, draining, and reclamation of wet and overflowed lands"; and if we should adopt the construction contended for by the Engineering Company, instead of promoting drainage wherever needed, counties in which no paper has a general circulation would be deprived of all benefit of the act, which manifestly was not the intention of the General Assembly.

If, however, there is a defect in the service of the notice, we are further of the opinion it has been waived.

All persons interested are parties to the drainage proceeding and have legal notice of every step taken up to the hearing of objections to the final report. They had notice that the time within which the report would be filed was fixed by statute, and that within a short time thereafter objections would be heard, and instead of filing objections, or questioning the power to issue the bonds, they file a paper in this proceeding on 15 December, 1913, after full knowledge of all the facts, acknowledging that they had actual notice of the time and place of hearing the final report on 17 March, 1913, and that their lands were assessed in the report.

Only one construction can be placed on this act of the parties, and that is that they are endeavoring to aid the drainage commissioners to establish the validity of the bonds, and to compel the Engineering Company to accept them. If so, they could not hereafter attack the bonds after their acceptance because of failure to publish the notice.

Again, the amendatory act of 1911, secs. 9 and 10, provide that—

"In case the total cost exceeds an average of 25 cents per acre on all lands in the district, the board of drainage commissioners shall give notice for three weeks by publication in some

COMMISSIONERS *v.* ENGINEERING CO.

newspaper published in the county in which the district or some part thereof is situated, if there be any such newspaper, and also by posting a written or printed notice at the door of the courthouse and at five conspicuous places in the district, reciting that they propose to issue bonds for the payment of the total cost of the improvement, giving the amount of bonds to be issued, the rate of interest that they are to bear, and the time when payable. Any landowner in the district not wanting to pay interest on the bonds may, within fifteen days after the publication of said notice, pay to the county treasurer the full amount for which his land is liable, to be ascertained from the classification sheet and the certificate of the board showing the total cost of the improvement, and have his lands released from liability to be assessed for the said improvement; but such land shall continue liable for any future assessment for maintenance or for any increased assessment authorized under the law."

And that—

"Each and every person owning land in the district who shall fail to pay to the county treasurer the full amount for which his land is liable, as aforesaid, within the time above specified, shall be deemed as consenting to the issuance of drainage bonds, and in consideration of the right to pay his proportion in installments, he hereby waives his right of defense to the payment of any assessments which may be levied for the payment of bonds, because of any irregularity, illegality, or defect in the proceedings prior to this time."

This provision was complied with by the drainage commissioners, and by its terms all parties to the proceedings are held to have consented to the issuing of the bonds.

We find no error.

Affirmed.